# Frick's Appeal.

By an agreement in writing between A. & B. it was stipulated that B. should have the option, within forty days, to purchase certain coal land belonging to A. at a price, and upon terms named in the agreement, the first payment of purchase money to be made within three months from acceptance of the offer. B. accepted the offer, by notice in writing, within the forty days. Prior to the expiration of the three months within which the first payment of purchase money was to be paid, the land was sold at sheriff's sale, as the property of A., under a judgment, entered prior to the agreement of sale, for a sum larger than the price named in the said agreement. It appeared that by reason of the commencement of new work on an abandoned railroad the land had greatly appreciated in value between the date of the said agreement and the sheriff's sale. The balance of proceeds of the sheriff's sale, in excess of the purchase money named in the agreement (which was applied to the satisfaction of judgments entered against A. prior to B.'s acceptance of the option), was claimed by A. and by B., each claiming as owner, and was awarded by the auditor and the court to B. · On appeal by A., *Held*, that B. became the equitable owner of the land upon his acceptance of the offer, and he was therefore entitled to the fund in controversy; the decree was therefore affirmed.

| | |
|---|---|
| 101 | 485 |
| 156 | 91 |
| 101 | 488 |
| 25 SC | 588 |
| 101 | 485 |
| 210 | 52 |
| 101 | 485 |
| 216 | 582 |

November 23d 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

APPEAL from the Court of Common Pleas of *Fayette county :* Of January Term 1883, No. 22.

This was an appeal by George W. Frick, from a decree of the said court, dismissing his exceptions to the report of an auditor distributing the proceeds of a sheriff's sale of real estate, and confirming the report.

The facts were as follows :—On December 16th 1880, George W. Frick being the owner, subject to the encumbrance of certain judgments, of all the coal underlying a tract of land in Fayette county, containing 353 acres, known as the "nine foot or Pittsburgh seam of coal," executed under seal, together with Thomas B. Schnatterly, an agreement in writing, whereby said Frick did "propose to sell unto Thomas B. Schnatterly," the said coal, with right to enter and mine the same, &c. The material portion of said agreement was as follows :—" The coal and mineral aforesaid, with privileges, &c., are offered at the rate of twenty-three dollars and seventy-five cents an acre, if the purchase money is all paid down in one payment. But if in two payments, and at different annual payments, then the price agreed upon shall be twenty-five dollars an acre. The amount to be ascertained by survey. The first payment shall be sufficient to pay off certain judgments and interests held by H. Clay Frick against George W. Frick, and entered of record in Fayette county, as liens against said coal. And if this proposition is accepted to pay all in two annual payments, and not all down,

then so much of the balance after paying the Frick judgments as shall be found necessary, shall be applied to the discharge of a lien of record in Fayette county against said coal, and in favor of Eli Beck, of Greensburg, Pa., for one thousand dollars, with interest, and the balance to the said George W. Frick or his assigns. The first payment whereof to be made within three months from the date of acceptance of this proposal. And in consideration of the premises, and of good and valuable consideration, as well as the sum of one dollar to him in hand paid, the receipt whereof is hereby acknowledged, he does hereby agree that this offer shall remain open for a period of forty days from the date hereof, and that the said Thomas B. Schnatterly, his heirs or assigns, shall have the exclusive right for said period to purchase said coal and minerals. Full possession of said coal and minerals, with privileges, &c., to be given when this offer is accepted, and the first payment of purchase money made; and a good deed for the same, with general warranty, and all privileges aforesaid, including clause of right to buy in fee simple, as the said Frick had the right to do. The deed to be made when the last payment is secured by judgment note or mortgage on the property. Witness my hand and seal this sixteenth day of December, 1880."

Sealed and deliv-
ered in the presence
of
    John Guffy,
    W. C. Guffy.

George W. Frick,    [seal.]
Thos. B. Schnatterly,   [seal.]

Within the period of forty days named in the above agreement, during which the offer was to remain open, Thomas B. Schnatterly sent to Frick the following notices of his acceptance of the offer :—

Greensburg, January 23d 1881.
  Mr. George W. Frick :

Dear Sir—I hereby give notice that I accept the proposition to purchase the Noble coal, as described and contained in an article of agreement between you and myself, dated the 16th of December 1880. And will comply with all its requirements, and will enter into an article for the absolute purchase of the same on Monday, the 25th day of January, 1881.

Thos. B. Schnatterly.

Pittsburgh, January 24, 1881.
  Mr. George W. Frick :

Dear Sir—I do hereby notify you that I accept the coal as provided in an optional agreement, dated the 16th day of.

December, 1880, and will comply with the requests in said article.

THOS. B. SCHNATTERLY.

Under an execution issued upon a judgment obtained against George W. Frick prior to December 16th 1880, the date of the above agreement, the said coal was levied upon as the property of George W. Frick, and sold at sheriff's sale for the sum of $15,101. Out of this sum was paid, without objection, all the judgments which had been obtained against Frick prior to January 23d 1881, the date of Schnatterly's notice of acceptance to Frick, leaving a balance, which was paid into court of $6,281, over and above costs, &c., and which was referred to an auditor for distribution.

Before the auditor the contesting claimants were Frick and Schnatterly, the former claiming that the title, legal and equitable, of the coal had never passed out of him, and the latter claiming that upon his acceptance of the option, the agreement of sale became mutual and operative, and the title to the coal had thereupon vested in him subject to the payment of purchase money, which had been satisfied by the proceeds of the sheriff's sale—said sale having occurred prior to the expiration of the three months from the date of accepting the option, within which the first payment of purchase money was to be made.

It appeared in evidence before the auditor that between the date of the paper of December 16th 1880, and its acceptance by Schnatterly on January 24th 1881, a projected railway which had been laid out and begun near the land in question, several years before, and abandoned, had been resuscitated, and advertisements had appeared for bids for construction. The result of this was an immediate appreciation in the market value of said coal, so that while the price at the higher of the two rates fixed in the agreement of option amounted to $8,825, in two annual payments, it sold at the forced sheriff's sale on April 9th 1881, for $15,101 in cash.

It further appeared that Schnatterly obtained a contract for constructing part of said railroad (after January 1881) and an effort was made by Frick to show fraudulent concealment, or misrepresentation by Schnatterly, in avoidance of the contract, but in this the auditor found he wholly failed.

The auditor in his report awarded said balance of $6,281, to Thomas B. Schnatterly, to which report George W. Frick filed inter alia, the following exceptions: (1) The auditor erred in giving any portion of the fund for distribution to Thomas B. Schnatterly: (2) in not applying the fund in court to the payment of all the judgments entered against George W. Frick, and in not giving the balance to George W. Frick.

[Frick's Appeal.]

The Court (Stowe, P. J.), after argument dismissed said exᐧ ceptions and confirmed the report, whereupon George W. Frick took this appeal, assigning for error the dismissal of his exceptions and the confirmation of the auditor's report

*W. H. Playford,* for the appellant.—The court below virtually decreed specific performance of the contract of option, under circumstances which rendered specific performance in-. equitable, and under which a chancellor would not have decreed it. At the date of the contract the railroad had been abandoned, at the date of the sheriff's sale it was under construction. Schnatterly's notice of acceptance was insufficient, as it did not. specify which of the two alternative offers be accepted ; he paid, nothing on his agreement, did not take possession nor make improvements. Specific performance could not have been decreed against him if the land had decreased in value ; he therefore cannot claim, as owner, the balance of the proceeds of sale : Bispham's Equity 433 ; Andrews *v.* Bell, 6 P. F. S. 343 ; Holmes's Appeal, 27 P. F. S. 50 ; Backus's Appeal, 8 P. F. S. 187 ; Bodine *v.* Glading, 9 Harris 50.

*Nath'l Ewing* and *C. E. Boyle,* for the appellee, submitted a printed brief.

· Mr. Justice Mercur delivered the opinion of the court, December 30th 1882.

This contention arises in the distribution of a fund produced by·a sheriff's sale of real estate. The correctness of the decree is determined by the extent of the appellee's interest in the property sold. The facts necessary to understand the case are these : The appellant owned the land bound by the lien of· judgments. On the 16th December 1880 a written agreement under seal was entered into between him and the appellee. The appellant, inter alia, thereby proposed to sell to the appellee, the offer to remain open for forty days thereafter, all the coal underlying certain lands therein described, at the rate of $23.75 an acre, if the purchase-money should all be paid down in one payment, but if in two different annual payments, then to be $25 per acre, the first. payment to be made within· three months from the date of acceptance of the proposal; a deed with general warranty to be made when the last payment should be secured by judgment note or mortgage on the property. On the 22d January 1881 and again on the 24th · the appellee gave to the appellant written notice that he accepted the proposition contained in the optional agreement and would comply with all of its requirements.

On the 9th April 1881, and before any payment became

due from the appellee, according to the agreement, the property was sold on a judgment recovered against the appellant prior to the 16th of December 1880. The sale produced a sum more than sufficient to pay all judgments against the appellant which were liens on the property and more than the whole sum which the appellee had agreed to pay therefor. That excess was claimed by each party to this appeal, but was ordered to be paid to the appellee. This appeal is from that decree.

The auditor found as a fact, and on sufficient evidence, that the appellee was not guilty of any fraud in procuring the agreement. The court confirmed the finding. The appellant entered into the agreement with sufficient opportunity to fairly understand all its terms and conditions. No undue means were practiced. The agreement contains nothing unlawful or inequitable. It gave the appellee forty days within which to accept the proposition. He accepted it, and gave to the appellant notice thereof, within the time specified. By this acceptance and notice the contract became binding on both parties thereto. Thenceforth there was no want of mutuality. It became a binding agreement for the sale and the purchase of the real estate. In equity the vendee became the owner thereof subject to the payment of the price stipulated. His right of property therein flows from the contract and exists before any payment of purchase-money may have been made: Siter et al. Appeal, 2 Casey 178. Hence a sheriff's sale on a judgment entered against the vendor before his agreement to sell and convey cannot give him the proceeds of the equitable estate of his vendee. As against his vendor, the vendee is entitled to the sum produced by the sale in excess of the amount which he agreed to pay. The vendor's interest is limited by the amount of his unpaid purchase-money. When that is fully paid his claim on the property and on the proceeds thereof is discharged. He is no more entitled to the excess than if the equitable owner had sold his interest at private sale, for a sum equal to that excess, to one who took it charged with the payment of the amount due for the legal title. In either case it is the measure of the value of the vendee's interest in the land: Kerr et al. v. Day, 2 Harris 112; Siter et al. Appeal, supra; Corson v. Mulvany, 13 Wright 88; Smith & Fleck's Appeal, 19 P. F. Smith 474.

It is true specific performance would not be enforced if there were such superior equities in the appellant as to make it unjust to him to enforce the contract; but we discover no such equities in this case. The fact that after acceptance of the offer, and before the vendee was in any default, the coal advanced in value, does not enlarge the equities of the vendor, nor deprive the vendee of the benefit of his bargain. If it had depreciated in value he must have borne the loss. As it was enhanced he

is entitled to the gain. The contract was certain, fair, and just, between the parties. The learned judge committed no error in decreeing the fund to be paid to the appellee.

Decree affirmed and appeal dismissed at the costs of the appellant.