John A. GUIDO, Appellant,

v.

TOWNSHIP OF SANDY and Dubois Dutch, LLC.

Commonwealth Court of Pennsylvania.

Argued May 7, 2002.

Decided Oct. 17, 2002.

Reargument Denied Dec. 2, 2002.

Anthony S. Guido, appellant, pro se.

Toni M. Cherry, DuBois, for appellee, DuBois Dutch, LLC.

BEFORE: SMITH–RIBNER, Judge, SIMPSON, Judge, and DOYLE, Senior Judge.[1]

OPINION BY Senior Judge DOYLE.

John A. Guido (Guido) appeals from an order of the Court of Common Pleas of Clearfield County that approved the request of Dubois Dutch, LLC (Dubois Dutch) for the subdivision of a parcel of land in Sandy Township on which Dubois Dutch owns and operates a "Dutch Pantry" restaurant.

The essential issue raised in this appeal is one of first impression: Does a leasehold interest with an option to purchase create a subdivision of an otherwise singular parcel of land? More specifically, under the complicated facts in this case, may someone with only a leasehold interest in a parcel of land, but with an option to purchase, create, or "lock-in", an adjoining lot as a pre-existing nonconforming undersized lot by exercising the option to purchase **after** the Township has amended its Zoning Ordinance which relegates the smaller adjoining lot to its undersize dimensions?

The essential facts gathered from a complicated factual background are as follows. Guido bought a tract of land approximately 3.379 acres in size in 1986. However, prior to his purchase, by virtue of a 1982 lease between Guido's predecessor in title and

1. The decision in this case was reached before the resignation of Senior Judge Doyle.

Dubois Dutch, that tract was separated and used, but not officially subdivided, into two parcels; one approximately 2.605 acres in size, upon which Dubois Dutch operated a Dutch Pantry Restaurant, and a second smaller parcel, 0.772 acres in size, upon which a gas station and convenience store had been built.[2] Both uses were approved uses under the Township's Zoning Ordinance existing at that time. The lease between Dubois Dutch and the previous landowner included a purchase option which provided Dubois Dutch with the right to buy its 2.605 acre parcel up until the expiration of the lease on February 29, 1999. At the time Dubois Dutch entered into the lease with the previous landowners, in June of 1982, and in 1986 when Guido purchased the entire tract, both of the lease-created parcels satisfied the minimum-lot size requirements under the Sandy Township Zoning Ordinance. Neither Dubois Dutch nor the former landlord sought approval of this "subdivision" of the tract under the Sandy Township Subdivision Ordinance[3] that was effective at the time the parties entered the lease.

On June 19, 1996, Sandy Township repealed its earlier Zoning Ordinance and adopted a new Zoning Ordinance which required minimum lot sizes of 45,000

square feet in the C–H—Commercial Highway Zoning District, in which the subject tract of land is located. The dispute in this case arose in November 1998, when Dubois Dutch sought to exercise its rights under the lease to purchase the 2.605 parcel where the Dutch Pantry restaurant is located. By Dubois Dutch exercising its option to purchase its 2.605 part of the tract, Guido would be left with a lot 0.772 acres in size, or 33,259 square feet—a size approximately 13,000 square feet below the required minimum lot size in the C–H—Commercial Highway Zoning District. Guido refused to convey the 2.605–acre portion of his property because his resulting 0.772 acre lot would be an undersized nonconforming lot under the Township's Zoning Ordinance.

## I.  Procedural History

On November 28, 1998, after exercising its option to purchase, Dubois Dutch sought subdivision approval from the Sandy Township Planning Commission. Guido objected to the subdivision plan, based upon the fact that such subdivision would render his remaining parcel an undersized lot in the zoning district where it is located.[4] The Planning Commission rejected the first subdivision approval request.

**2.** Guido owns and operates this convenience store.

**3.** The Township adopted its first Subdivision Ordinance on September 27, 1965, and this remained applicable until May 1997, when the Township adopted its present Subdivision and Land Development Ordinance.

**4.** On February 12, 1999, Dubois Dutch filed an action with the Court of Common Pleas of Clearfield County seeking specific performance from Guido with regard to Dubois Dutch's exercise of its option to purchase, which Guido had earlier refused to do. Guido filed a counterclaim in that proceeding. On March 10, 1999, Guido filed his own ejectment action in Common Pleas Court requesting the court grant him possession of the

leasehold premises free and clear of Dubois Dutch's claims, and additional damages. Dubois Dutch filed preliminary objections to Guido's ejectment complaint. On May 17, 1999, the Common Pleas Court, acting on Dubois Dutch's preliminary objections and Guido's counterclaim to Dubois Dutch's specific performance action, issued an order staying all litigation, pending the outcome of Dubois Dutch's application before the Planning Commission seeking a declaration that the 0.772 acre residual lot of Guido was a valid pre-existing nonconforming lot. Apparently, this was the underlying action which triggered the second application of Dubois Dutch for subdivision approval.

In June 1999, Dubois Dutch again sought subdivision approval from the Sandy Township Supervisors. Dubois Dutch argued before the Supervisors that the smaller residual lot had existed lawfully before the enactment of the 1996 Zoning Ordinance by reason of the unexecuted option to purchase, and therefore, that lot constituted a continuing and valid pre-existing nonconforming lot. The Supervisors approved the subdivision request on June 13, 1999, concluding that the residual lot was a valid pre-existing nonconforming lot under the 1996 Zoning Ordinance. Guido appealed that decision to the Common Pleas Court which granted Guido's request for a de novo hearing and, following a hearing, ultimately issued the decision and order upholding the decision of the Supervisors.

In his appeal to Common Pleas from the Supervisors' decision, Guido argued that the Supervisors' erred in approving Dubois Dutch's request for subdivision approval because (1) the residual lot did not meet the minimum lot size requirements for the district in which it is located under the 1996 Zoning Ordinance, as required by the Sandy Township Subdivision and Land Development Ordinance, (2) Dubois Dutch's application did not include a request for modification of the Subdivision Ordinance under Section 1004 of the Pennsylvania Municipalities Planning Code (MPC),[5] 53 P.S. § 101004, which requires a showing of hardship, and (3) the Supervisors' approval of the application, in contravention of the Township's ordinances, will impair Guido's ability to use and develop the residual lot which he owns.

The trial court judge, in rendering a thorough and scholarly opinion involving this novel case, characterized the issues before him as follows: (a) whether the Township's Subdivision Ordinance, which was in effect in 1982 at the time Dubois Dutch obtained its equitable interest in the 2.605 acre parcel under the lease, controls the question of whether the purchase-option provision of the lease created a subdivision of the original tract **at that time;** (b) whether the creation of the leasehold in favor of Dubois Dutch's predecessor in interest, as well as Dubois Dutch's election to exercise its rights under the purchase-option, constituted a subdivision of the original tract; (c) whether the residual parcel constituted a pre-existing nonconforming lot under Section 107 of the MPC, 53 P.S. § 10107, and Section 402 of the Township's Zoning Ordinance; and (d), whether the current Zoning Ordinance permits the existence of a pre-existing nonconforming lot.

Common Pleas concluded that:

1. The Trial Court shall conduct a de novo review of the decision of the Sandy Township Board of Supervisors granting [Developer's] subdivision request when it takes additional evidence.

2. The Sandy Township Subdivision and Land Use Ordinance in Effect on June 16, 1982 Governs the Issue of Whether a Subdivision Was Created by the June 1982 Lease.

3. The Creation of the Leasehold, as well as the Proposed Sale of the Property Pursuant to the Exercise of the Option under the June 1982 Lease, Constitutes a "Subdivision" Under Applicable Law.

    a. Both the MPC and the Sandy Township Subdivision [Ordinance] require that a "subdivision" be approved by the Township.

    b. A Subdivision of the Parcel Did Occur in Violation of Applicable Law.

4. The Residual Parcel Existing Following Subdivision is a Nonconforming

---

**5.** Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202.

Lot as Defined by the MPC and Current Sandy Township Zoning Ordinance.

5. The Governing Sandy Township Zoning Ordinance Permits the Existence of a Nonconforming Lot.

(Trial Court Opinion at 20).

Common Pleas thus held that Guido's residual lot constituted a pre-existing nonconforming lot under the current Zoning Ordinance and the MPC, and that the current Zoning Ordinance permits the continuation of a nonconforming lot that exists in the same form as before the enactment of the current ordinance, and entered an order approving Dubois Dutch's application for a subdivision. Guido now brings the present appeal before this Court.

## II. Substantive Issues

In his appeal from the trial court's order, Guido raises the following issues for our review: (1) whether the Township supervisors, and, on appeal, the trial court, had jurisdiction to determine that the residual lot is a pre-existing nonconforming lot; (2) whether the trial court erred as a matter of law in approving the subdivision on the basis that the residual lot is a pre-existing nonconforming lot; and (3) whether the trial court erred as a matter of law in relying in part upon evidence that was not part of the record, which evidence was barred by the trial court's order granting Guido's motion in limine.

*Issue: Trial court's authority to determine the issue of whether the residual lot is a valid pre-existing nonconforming lot*

Guido first challenges the trial court's decision by arguing that Common Pleas lacked jurisdiction to determine that the residual lot constitutes a valid nonconforming lot. That determination is the pivotal underpinning of the trial court's conclusion

that the subdivision plan submitted by Dubois Dutch satisfied the requirements of the Township's Subdivision Ordinance.

■ Guido argues that the Township's Zoning Hearing Board, and not the Supervisors, had the sole authority to determine whether the lot was a valid nonconforming lot, and relies upon Section 909.1 of the MPC, 53 P.S. § 10909.1, which provides:

(a) The zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications on the following matters:

. . . .

(3) Appeals from the determination of the zoning officer, including, but not limited to, the granting or denial of any permit, or failure to act on the application therefor, the issuance of a cease and desist order or for the **registration or refusal to register any nonconforming** use, structure or **lot.**

(Emphasis added).

The present matter, however, does not involve a request, or refusal, to register a nonconforming lot, but rather the question of whether the Township's Supervisors, and subsequently Common Pleas, could recognize the existence of a nonconforming lot in reviewing an **application** for subdivision approval. Sections 501–516 of the MPC, 53 P.S. §§ 10501–10516, set forth the powers of the governing body of a municipality with regard to the adoption, application and enforcement of subdivision and land development ordinances. In fulfilling the mandates of the MPC, municipalities adopt such ordinances, which typically require parties seeking subdivision approval to submit "plats"—the map or plan of a proposed subdivision.[6] The MPC provides guidelines for municipalities adopting subdivision ordinances and describes the matters that such ordinances may address, including layout and compli-

6. *See* Section 107 of the MPC, 53 P.S. § 10107.

ance with the municipality's comprehensive plan and provisions of other ordinances adopted in furtherance of that comprehensive plan. Additionally, the MPC allows municipalities to consider granting modifications to parties seeking subdivision approval. 53 P.S. § 10512.1. These sections of the MPC do not specifically forbid township supervisors reviewing subdivision requests from considering the pre-existing status of a parcel of land. Nor, as noted above, does Section 909.1 of the MPC specifically preclude township supervisors from engaging in an examination of the status of a residual lot once the application for subdivision approval is approved. We thus conclude that the trial court did not err in addressing the issue of nonconformity.

***Issue: Did the trial court err in approving the subdivision on the basis of the Court's conclusion that the residual lot was a pre-existing nonconforming lot?***

■ Common Pleas, in analyzing the facts and law, first concluded that it should apply the Sandy Township 1965 Subdivision Ordinance that was in effect at the time the predecessor in interest of Dubois Dutch entered into the lease with Guido's predecessor in title in 1982.[7] The trial court reasoned that Dubois Dutch's purchase option gave it equitable title to the property **relating back** to the date it entered into the lease in 1982. While it may be true that Dubois Dutch' equitable title may relate back to the original date of the lease, the trial court provided no other legal basis for concluding that the Subdivision Ordinance effective at that time should apply. We conclude that the trial court erred in this respect and by concluding that Dubois Dutch's equitable title created an inchoate subdivision that allowed for the earlier Subdivision Ordinance, rather than the present Subdivision Ordinance, to control.

There is simply no legal authority, or reason, to hold that the **potential** right to exercise an option to purchase, created by a lease in 1982, which Dubois Dutch did

---

7. By way of additional background, James Taylor was the original owner of the tract. By deed dated December 10, 1968, Taylor leased his 3.643–acre parcel to Boron Oil Co. for a twenty-year period. Boron then proceeded to erect and operate a gas-service station on the residual lot at issue in this case. Boron entered into an agreement with Hospitality Motor Inns, Inc. (HMI) for the sublease of a portion of its leasehold to HMI for the purpose of erecting the Dutch Pantry Restaurant. In 1970, HMI presented a site development plan to the Sandy Township Planning and Zoning Commission, which approved the plan. On October 28, 1970 the Township issued a building permit to HMI for the construction of the Dutch Pantry restaurant on a portion of the tract leased by Boron, that is, the smaller 0.772 acre lot. On January 31, 1973, Boron assigned that portion of its lease with Taylor that included the Dutch Pantry to HMI and reserved the 0.772–acre lot to itself for use as a service station. HMI sold the Dutch Pantry restaurant to Harley Hotels and

simultaneously assigned to Harley Hotels its sublease and option agreement. On June 16, 1982, the Dierringers and Harley Hotels entered into an interim lease of the 2.605–acre portion of the tract, to commence on August 1, 1982. That lease gave Harley Hotels the option to purchase the leased parcel upon which the Dutch Pantry is located for $30,000. By deed dated July 2, 1982, Taylor conveyed a 3.361–acre tract to the Dierringers, reserving 0.282 acres to themselves. On July 7, 1982, Harley Hotels and the Dierringers entered into an interim lease for the period from July 8, 1982, through July 31, 1982, of the 2.605 parcel, on the terms set out in the June 1982 lease. On July 12, 1982, one of the parties filed a Memorandum of the Lease dated July 7, 1982, with the Clearfield County Recorder of Deeds. The Memorandum of Lease was subject to the terms of the 1982 Lease, and contained exhibits that described the 2.605 Dutch Pantry parcel, as well as the residual 0.772–acre parcel held by the Dierringers.

not seek to exercise until 1999, created a subdivision in 1982 under an ordinance which was no longer in existence when the option was exercised. In this case, Dubois Dutch's **right** to pursue subdivision approval was no different in 1982 than it was in 1998, when it finally initiated its first request before the Township Supervisors. Although that right might not have arisen until Dubois Dutch elected to exercise its option, its decision to exercise its right, or to forego its right, was the sole impediment to its right to official subdivision. Hence, any impairment to Dubois Dutch's right to apply under the 1965 Subdivision Ordinance, rather than the 1996 Land Development and Subdivision Ordinance, is the result of Dubois Dutch's own decision to delay the exercise of its option. Accordingly, we are compelled to conclude that the 1996 Sandy Township Subdivision and Land Development Ordinance, rather than the 1965 Subdivision Ordinance, is applicable to the question of whether the trial court properly granted subdivision approval.[8]

With this in mind, we will consider whether Dubois Dutch' subdivision application satisfies the requirements of the present Subdivision Ordinance. Guido argues that the trial court erred in concluding that subdivision approval was appropriate based on its determination that the residual parcel is a pre-existing nonconforming lot under provisions of the present Township Subdivision and Land Development Ordinance.

Guido argues here that the residual parcel is not a pre-existing nonconforming lot because (1) neither the previous landlord nor he sought subdivision approval before the amendment to the **Zoning** Ordinance in 1996, which relegated the adjoining 0.772 acre lot to its undersized dimensions, and (2) the parcel is not a legal pre-existing nonconforming lot under any definition of that term. Dubois Dutch, on the other hand, argues that the trial court correctly concluded that the parcel is a pre-existing nonconforming lot.

The trial court, in reaching its decision, relied upon the definitions of the term "nonconforming lot" found in the present Township Zoning Ordinance and the MPC, which are identical, and provide:

[A nonconforming lot is] a lot the area or dimension of which was lawful prior to the adoption or amendment of a zoning ordinance, but which fails to conform to the requirements of the zoning district in which it is located by reasons of such adoption or amendment.

Township Zoning Ordinance § 202; 53 P.S. § 10107.

The trial court determined that the word "lawful" refers not to the manner in which the parcel came to have nonconforming status, i.e., by virtue of a legal or illegal subdivision, but rather refers only to the issue of whether the "lot" conformed to the previously applicable dimensional requirements. We believe that the trial court erred in concluding that the term "lawful" is so limited and conclude that the word "lawful," even in this limited context of nonconforming lots, encompasses more than merely the lawful size and dimensions of a lot under a zoning ordinance, but also whether the lot in question was previously

8. Even if the creation of the leasehold-with-option-to-purchase in 1982 had created a subdivision, see White v. Township of Upper St. Clair, 799 A.2d 188 (Pa.Cmwlth.2002), the then applicable 1965 Subdivision Ordinance would have required the parties to comply with the provisions of that Ordinance. In particular, that Ordinance required, among other things, parties seeking to subdivide property to submit plans and data to the Township Planning Commission. There is obviously no evidence in the record of such compliance.

a separate and distinct lot. Certainly the entire 3.379 acre parcel was a lawful conforming lot; but the fact is that the 0.772 acre lot was not a "lawful" lot because there had never been a lawful subdivision. We must therefore conclude that the residual lot is not a valid "nonconforming lot" under the terms of the Township's present zoning ordinance.

The trial court relied in its decision upon Section 611A of the Township's 1997 Land Division and Subdivision Ordinance, and determined that that section directs parties seeking subdivision approval to consult the Zoning Ordinance "to determine whether the lot at issue satisfies the size requirements of [the Zoning Ordinance] **or is otherwise exempt from such requirement.**" (Trial Court Opinion at 13)(emphasis added). The trial court added that "[i]f a lot complies with the terms of the zoning ordinance, whether through a finding that a lot is nonconforming or otherwise exempt, then obviously the party seeking subdivision has also satisfied Section 611A." (Trial Court Opinion at 14).

Section 611A of the 1997 Subdivision Ordinance provides: "Lots shall comply with the minimum requirements of the Sandy Township Zoning Ordinance." Contrary to the trial court's opinion, there is no additional reference in that section to **exemptions** from that provision's requirement that lots comply with the dimensional mandates of the Zoning Ordinance. The trial court, we believe, reached too far in supplementing the plain language of Section 611A.

As Guido points out, a party may seek relief from the application of any provision of the 1997 Subdivision Ordinance under Section 1004 of the Ordinance entitled "Modifications." However, when Dubois Dutch requested subdivision approval, it never sought relief under that section, but argued only that the small adjoining un-

dersized lot was a pre-existing nonconforming lot. We cannot conclude that this was a tacit request for "modification." Section 1004 of the 1997 Subdivision Ordinance provides, in pertinent part, that "[a]ll requests for a modification shall be in writing and shall accompany and be a part of the application for subdivision approval. The request shall state in full the grounds and facts of unreasonableness or hardship on which the request is based...." Dubois Dutch did not, in writing, specifically request modification under this provision. Accordingly, we conclude that the trial court's affirmation of the Supervisors' approval of the subdivision request appears erroneous under this provision of the 1997 Land Development and Subdivision Ordinance.

The trial court also relied upon Section 401 of the 1996 Sandy Township Zoning Ordinance to support its decision. That section provides, in part, as follows: "It is the intention of the Township of Sandy that all legal nonconforming uses and structures shall be able to continue...." Guido argued before the trial court that this section did not apply because it appears under the heading "Nonconforming Uses and Structures." The trial court rejected this argument, noting that the concept of nonconforming lots is a related legal concept. Although the caption of this section does appear to be limited to uses and structures, the specific section upon which the trial court relied, Section 401.50, does implicitly address lots as well as uses and structures. That section provides:

**Nothing contained herein shall require any change in the overall layout,** plans, construction, **size** or designated use **of any development,** building, structure or part thereof for which official approval and required permits have been granted prior to the effective date of this Ordinance and where construc-

tion is complete within six (6) months from the date of issuance of the permit. (Emphasis added).

The trial court opined that this provision "clearly intends to preserve the existence of presently non-compliant conditions for which a permit has been issued or approval granted at some time in the past." (Trial Court Opinion at 14). The trial court noted the Township's issuance in 1970 of the building permit for the construction of the Dutch Pantry, and that, were the trial court to deny subdivision approval, the intent of this provision would be violated because the denial "would require a change in the size and perhaps overall layout of this development that has already been approved by Sandy Township and for which Dubois Dutch has expended a considerable sum to obtain." (Trial Court Opinion at 15).

Guido argues that the trial court's reliance upon Section 401.50, even if applicable to nonconforming lots, as well as nonconforming uses and structures, does not support the trial court's conclusion that the residual parcel is an existing lot of record, because it is "conditioned upon official approval" and receipt of required permits. Guido asserts that, because no party, including their predecessors in interest, ever sought official subdivision approval, this section cannot apply. We agree with Guido in this respect.

Although the record indicates that a building permit was issued for the construction of the Dutch Pantry in 1970, it is equally clear that subdivision approval has never been granted to this development. When the restaurant was built it did comply in all respects with the permitted uses in the C–H—Commercial Highway Zoning District, and the lot upon which it was built, i.e., the 3.379–acre parcel, also conformed with the zoning ordinance. Hence, the issuance of the building permit was proper. Accordingly, Section 401 of the ordinance is not applicable to the facts in this case.

The trial court was also persuaded by Dubois Dutch's reliance upon Section 402 of the current Zoning Ordinance, which provides as follows:

Any lot of record existing at the effective date of this Ordinance, and held in separate ownership different from the ownership of adjoining lots, may be used for the erection of a structure conforming to the use regulations of the district in which it is located even though its lot area and width are less than the minimum required by this Ordinance....

Based upon the fact that the Memorandum of Lease had been filed with the recorder of deeds in Clearfield County in 1982, the trial court deemed that the residual parcel was a lot "of record" and a valid preexisting nonconforming lot.

Previous versions of the Zoning Ordinance, however, defined the term "lot of record" as follows: "A lot which is part of a subdivision recorded in the office of the County Recorder, or a parcel or tract of land described by metes and bounds which has been so recorded." Township Zoning Ordinance of 1964 § 2201(94). Obviously, because the current Zoning Ordinance did not include this definition, it is not binding. It is, however, persuasive. The definition requires that, for a lot to be "of record," it must be part of a subdivision recorded in the County Recorder's office. We cannot agree with the trial court that the recording of the 1982 lease satisfies this requirement, and moreover the lot was not in single and separate ownership, distinct from the "adjoining" 2.605 acre lot.

One of Guido's final arguments is that the recording of the lease, without subdivision approval, violates Section 513 of the MPC, 53 P.S. § 10513. However, based

upon our resolution of the other issues in this case, we need not address this argument, except to note that that provision is part of the enforcement provisions of the MPC, and the task of such enforcement is delegated to the municipality and its designated agents.

In summary, we hold that the trial court erred in concluding that the residual lot was a pre-existing nonconforming lot, and hence reverse the order of Common Pleas.

### ORDER

And now, October 17, 2002, the Order of the Court of Common Pleas dated June 5, 2001, is hereby reversed.

Judge SIMPSON dissents.