880 A.2d 1220

**John A. GUIDO**

v.

**TOWNSHIP OF SANDY and DuBois Dutch, LLC**

**Appeal of DuBois Dutch, LLC.**

Supreme Court of Pennsylvania.

Argued March 2, 2004.

Decided Aug. 23, 2005.

94

Toni M. Cherry, for Dubois Dutch, LLC, appellant.

Anthony S. Guido, DuBois, for John A. Guido, appellee.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice BAER.

In this dispute concerning real property, we granted allocatur limited to determining whether a leasehold interest in a parcel of land coupled with an option to purchase such land creates a property interest in the lessee-optionee sufficient to support a legally recognized subdivision of the property either at the time the lease and option were simultaneously executed or when the purchase option was exercised. The Commonwealth Court held that governmental recognition of a subdivision was not proper at either time because the petitioning party failed to satisfy the requirements of the municipality's relevant ordinances. We affirm.

## BACKGROUND

Appellee John Guido (Guido) purchased the Property at issue situate in Sandy Township, Pennsylvania, in 1986. At purchase, the 3.379–acre lot was informally separated into two parcels by virtue of a 1982 lease (hereinafter, 1982 Lease) between Guido's predecessor in title and Appellant Dubois Dutch, LLC's predecessor lessee.[1] Dubois Dutch owns and operates a Dutch Pantry Restaurant on a 2.605–acre area of the lot; Guido retains occupancy of the smaller portion of the parcel, approximately 0.772 acres in area, on which he built and maintains a convenience store and gas station.[2]

[1] Notwithstanding that the events in question occurred over a span during which title to the land in question and the lease on the 2.605–acre portion thereof both changed hands, no issues before us implicate questions of succession of title or lease. For the sake of convenience, hereinafter the line of owners of the tract in question will be identified collectively as "Guido," and the lessees as "Dubois Dutch," corresponding to the parties to the instant appeal.

[2] Hereinafter, the entire 3.379–acre lot will be referred to as the "Property," the 2.605–acre portion of the Property on which Dubois

The present conflict arose because the 1982 Lease between Dubois Dutch and Guido contained an option granting Dubois Dutch the opportunity to purchase the Restaurant Parcel before the expiration of the 1982 Lease on February 29, 1999 (hereinafter, the Option). On June 19, 1996, however, before Dubois Dutch had exercised the Option and prior to the 1982 Lease's expiration, Sandy Township repealed its 1964 Zoning Ordinance (hereinafter, 1964 Zoning Ordinance), which applied when the 1982 Lease and Option were executed, and adopted a new Zoning Ordinance (hereinafter, 1996 Zoning Ordinance), which required minimum lot sizes of 45,000 square feet in the area where the Property is located.

In November 1998, Dubois Dutch attempted to exercise the Option. Exercise of the Option would have left Guido with a lot 33,259 square feet in area, 11,741 square feet fewer than the required minimum lot size set forth in the 1996 Zoning Ordinance.[3] Guido refused to convey the Restaurant Parcel to Dubois Dutch, due to his concern that his residue lot, the Gas Station Parcel, would be non-conforming pursuant to the 1996 Zoning Ordinance and thus rendered commercially useless. On November 28, 1998, Dubois Dutch sought formal subdivision approval from the Sandy Township Planning Commission (hereinafter, Planning Commission).[4] Guido objected and the

Dutch operates the Dutch Pantry Restaurant will be identified as the "Restaurant Parcel," and the residual 0.772–acre portion of the Property will be referred to as the "Gas Station Parcel." While we utilize the acreages as set forth in the Commonwealth Court's opinion, we acknowledge a discrepancy of 0.002 acres between the area of the Property and the combined area of the individual parcels (0.772 + 2.605 = 3.377). The discrepancy, however, is not relevant to the legal issues in this appeal.

3. Both portions of the lot would have had acceptable dimensions for commercial use under the 1964 Zoning Ordinance.

4. As discussed in detail *infra*, the Pennsylvania Municipalities Planning Code, 53 P.S. §§ 10101, *et seq.* (MPC), allows municipalities to regulate subdivision and land development through enacting subdivision and land use ordinances. When a municipality has enacted such an ordinance, no formal subdivisions of land may occur without compliance with the ordinance. *See* 53 P.S. § 10507. In addition to the 1964 and 1996 Zoning Ordinances previously identified, Sandy Township specifically enacted subdivision ordinances which require formal approval by the municipality of all subdivisions and provide penalties for

Planning Commission rejected the subdivision approval request.

On February 12, 1999, Dubois Dutch commenced a legal action against Guido in the Clearfield County Court of Common Pleas, seeking specific performance of the Option. As a defense to specific performance, Guido asserted that he could not perform his contractual duty because subdivision of the property would violate the 1996 Zoning Ordinance. Additionally, Guido countersued for ejectment, seeking possession of the Restaurant Parcel free of any claim by Dubois Dutch. Dubois Dutch filed preliminary objections to the ejectment action, raising the pendency of its prior action for specific performance, pursuant to Pa.R.C.P. 1028(a)(6).[5] On May 17, 1999, following a hearing, in an apparent effort to effectuate an amicable resolution of the parties' dispute, the trial court directed Dubois Dutch to apply, once again, to the Planning Commission seeking approval of a formal subdivision of the Property. The trial court also issued an order staying all litigation pending a decision by the Planning Commission on the subdivision approval request it directed Dubois Dutch to submit.[6]

Pursuant to the court's direction, Dubois Dutch reapplied to the Planning Commission.[7] In due course, Dubois Dutch raised two principal arguments: first, that the 1982 Lease and

failure to comply (hereinafter, 1965 Subdivision Ordinance and 1997 Subdivision Ordinance). As is relevant to this case, property owners seeking approval under the 1997 Subdivision Ordinance must comply, *inter alia*, with requirements in the applicable 1996 Zoning Ordinance.

5. Rule 1028, providing bases on which a party may raise preliminary objections, provides in subsection (a)(6) that preliminary objections may be filed due to "pendency of a prior action or agreement for alternative dispute resolution."

6. The underlying actions apparently are still pending in the Clearfield County Court of Common Pleas. Although not relevant to the appeal currently before this Court, neither the parties nor the courts below have cited authority suggesting that the trial court could not have ordered Guido to perform the contract despite the fact that the residual Gas Station Parcel would be in violation of the 1996 Zoning Ordinance and the 1997 Subdivision Ordinance.

7. The record is not clear as to the date on which Dubois Dutch applied for this second subdivision application with the Planning Commission.

Option effected a *per se* lawful subdivision at inception; or second, that upon Dubois Dutch's exercise of the Option, its ownership interest would relate back to 1982 and thus be governed by the 1964 Zoning Ordinance, such that even if the 1996 Zoning Ordinance applied, Guido's Gas Station Parcel should win approval as a pre-existing non-conforming lot [8] with a pre-existing non-conforming ongoing business situate thereon. On June 13, 1999, the Planning Commission agreed and approved Dubois Dutch's request for formal subdivision.[9]

On August 3, 1999, Guido filed an appeal from the Planning Commission's decision with the Clearfield County Court of Common Pleas. On June 13, 2000, the trial court held a *de novo* hearing. The court found that the creation of the 1982 Lease and Option and Dubois Dutch's attempt to execute the Option constituted a Subdivision of the property under the MPC as of June 1982. The trial court noted that equitable title of property subject to a lease coupled with a purchase option passes, upon exercise of a purchase option, not as of the date of exercise, but rather as of the date of option creation. Thus, it concluded that the 1965 Subdivision Ordinance governed.[10] Trial Ct. Op. at 8–9.

8. In conformity with the definition in section 107 of the MPC, 53 P.S. § 10107, the 1996 Zoning Ordinance defines "Nonconforming Lot" as "a lot the area or dimension of which was lawful prior to the adoption or amendment of this Zoning Ordinance, but which fails to conform to the requirements of the zoning district in which it is located by reasons of such adoption or amendment." 1996 Zoning Ordinance at 10.

9. At this point, it is advantageous to distinguish the informal division of property by parties from the formal subdivision approval process set forth in the MPC and the relevant ordinances. The parties have cited no impediment to the transfer of property between private parties even if such transfer would violate a municipality's ordinances such that the purchaser would be unable to use or develop the land. We will refer hereinafter to such a transfer of ownership as "division-in-fact," and characterize the property as "divided-in-fact." Conversely, when a property owner complies with the MPC and the municipality's subdivision ordinances by obtaining the requisite approval, we will denote such formally approved division as "Subdivision," and characterize the property as "Subdivided."

10. This point is of questionable import since under either the 1965 or 1997 Subdivision Ordinance any subdivision that occurred was, on its face, "illegal" for want of formal approval, a point the trial court notes in its Conclusions of Law. Trial Ct. Op. at 20.

The court then considered the 1965 Subdivision Ordinance's requirement that the lots resulting from a Subdivision must "comply with the minimum requirements of the Sandy Township Zoning Ordinance." Trial Ct. Op. at 13 (quoting 1965 Subdivision Ordinance § 611(A)). Concluding that the "minimum requirements" could be satisfied by use of the Zoning Ordinance's exceptions, such as pre-existing non-conforming lots, the court held that the Gas Station Parcel satisfied the definition of non-conforming use because its lot size was "lawful" under the 1964 Zoning Ordinance, even if the property had not been formally Subdivided. Accordingly, the trial court held that the Gas Station Parcel constituted a permissible pre-existing non-conforming lot under the 1996 Zoning Ordinance. The court entered an order approving Dubois Dutch's Subdivision application. Guido timely appealed that decision to the Commonwealth Court.

A three-judge panel of the Commonwealth Court reversed the trial court by a vote of two to one.[11] *See Guido v. Township of Sandy*, 809 A.2d 1036 (Pa.Cmwlth.2002). The majority found that a leasehold interest coupled with an option to purchase does not create a Subdivision of the property and, therefore, Dubois Dutch could not effectively "lock-in" the Gas Station Parcel as a pre-existing non-conforming lot by exercising its option to purchase a portion of the property after the 1996 Zoning Ordinance took effect. The Commonwealth Court held:

> There is simply no legal authority, or reason, to hold that the **potential** right to exercise an option to purchase, created by a lease in 1982, which Dubois Dutch did not seek to exercise until 1999, created a subdivision in 1982 under an ordinance which was no longer in existence when the option was exercised. In this case, Dubois Dutch's **right** to pursue subdivision approval was no different in 1982 than it was in 1998, when it finally initiated its first request before the Township Supervisors. Although that right might not have arisen until Dubois Dutch elected to exercise its option, its decision to exercise its right, or to forego its right, was the

11. Judge Simpson dissented without opinion.

sole impediment to its right to official subdivision. Hence, any impairment to Dubois Dutch's right to apply under the 1965 Subdivision Ordinance, rather than the [1997 Subdivision Ordinance], is the result of Dubois Dutch's own decision to delay the exercise of its option.

*Guido,* 809 A.2d at 1041–42 (emphasis in original). The majority further rejected the trial court's conclusion that the Gas Station Property could satisfy the 1997 Subdivision Ordinance's requirement that the lots meet the "minimum requirements" of the 1996 Zoning Ordinance. It found that the "minimum requirements" could not be satisfied by way of exceptions to the 1996 Zoning Ordinance—e.g., by designation as a pre-existing non-conforming lot—and held that the only remedy available to Dubois Dutch was the modification provisions of the 1997 Subdivision Ordinance. The modification provision, modeled on MPC section 512, allows the municipality to modify any of its requirements if the literal enforcement of the provision would exact undue hardship due to the particular conditions pertaining to the land. *See* 53 P.S. § 10512.1(a). The court, however, noted that Dubois Dutch failed to provide the required written request for modification.[12] *See* 53 P.S. § 10512(b). Therefore, the majority found that, because Dubois Dutch had never sought Subdivision approval before the effective date of the 1996 Zoning Ordinance or properly requested modification, the trial court erred in approving the Subdivision application based on its finding of pre-existing non-conforming use.

Dubois Dutch filed a petition for reargument, which the Commonwealth Court denied. On January 2, 2003, Dubois Dutch timely filed a petition for allowance of appeal to this Court. By Order dated August 27, 2003, our Court granted the appeal limited to the following issue: Whether a leasehold interest with an option to purchase creates a property interest in the lessee sufficient to support a Subdivision under the terms of the MPC.

**12.** Guido asserts, without citation to the record, that Dubois Dutch originally applied for approval by submitting a modification request, which it later withdrew. As such modification request was not involved in the current approval proceeding, it is irrelevant to our discussion.

### DISCUSSION

■ The parties do not materially dispute the facts stated above. Thus, the issue under consideration presents a question of law and our review is plenary. *Naylor v. Township of Hellam,* 565 Pa. 397, 773 A.2d 770, 773 (2001).

### I.

The parties agree that the 1982 Lease and Option, at inception, reflected their mutual intention to grant Dubois Dutch an option to purchase the Restaurant Parcel. This does not answer, in itself, Guido's argument that he should not be compelled to specifically perform his obligation thereunder by conveying that parcel to Dubois Dutch. Nevertheless, because the 1982 Lease and Option lie at the heart of this dispute, we must consider preliminarily its legal effect *vis-à-vis* the parties.

At the outset, we note that Dubois Dutch's status as optionee in the Restaurant Parcel conferred upon it a "substantial interest in the land" that, upon exercise of the Option, made it owner *ab initio* of the Restaurant Parcel. In *Detwiler v. Capone* we discussed the rights conferred by a lease containing a purchase option.

> An option to purchase is analogous to a contract for the sale of land; it is in nature an encumbrance on the land pledged. In such case, the [optionor] is a trustee of the legal title for the benefit of the purchaser [*qua* optionee].... Equity regards the person bound to convey as having done what he should have done, i.e. made the conveyance, and treats him as trustee for the optionee. Where an option is exercised the title of the optionee relates back to the date of the option and his interest is regarded as real estate of that time....

357 Pa. 495, 55 A.2d 380, 383 (1947) (internal quotation marks and citations omitted); *see In re Powell,* 385 Pa. 467, 123 A.2d 650, 654 (1956) ("An option to purchase land is a substantial interest in the land; and, when the option is exercised, the optionee's ownership reverts to the granting of the option

....."); *cf. Chelan County v. Wilson,* 49 Wash.App. 628, 744 P.2d 1106, 1109 (1987) (noting that even where issues regarding regulatory compliance inhere in a transaction conveying land, the vendee of property has a valid and subsisting interest therein). We also observed in *Detwiler* that "the landlord-tenant relationship between the parties ceased to exist upon verbal communication of plaintiffs' election [to exercise the option] and the lease was converted into a contract of sale." 55 A.2d at 384. This ruling reflects an historic account of the legal effect of the exercise of an option to purchase, the import of which brooks no misunderstanding. Thus, in *People's Street–Railway Co. v. Spencer,* 156 Pa. 85, 27 A. 113 (1893), we wrote:

> It was held in [*Kerr v. Day,* 14 Pa. 112 (1850)], that an option to purchase is a substantial interest in land, which may be conveyed to a vendee; and the English chancery cases were reviewed by Bell, J., with the result that, 'when the lessee made his option to purchase, he was to be considered as the owner ab initio. Indeed, the determination can only be supported by attributing to the lessee an equitable estate in the land, under his covenant for an optional purchase, which passed to his alienee, vesting him with the right to call for a specific execution on declaring his election.' And in [*Frick's Appeal,* 101 Pa. 485 (1882)], where the land was sold upon a prior judgment before payment or conveyance, it was held that the surplus was the property of the optional vendee.

*Id.* at 114. Accordingly, Dubois Dutch's equitable title reverted, upon exercise of the Option, back to the date of formation of the 1982 Lease and Option conferring title upon Dubois Dutch effective June 16, 1982.

Guido does not materially contest this assertion; instead, he aims to minimize its importance. He argues first that the "relation back principle" relied upon by Dubois Dutch applies only as between contracting parties, and does not affect the enforcement of zoning ordinances. The authorities he relies upon, however, merely illustrate the primacy of zoning author-

ity over competing or inconsistent contractual arrangements.[13] These cases say nothing about the antecedent proposition that, upon exercise, the Option vested title to the parcel in Dubois Dutch as of June 16, 1982, notwithstanding the consequences of any subsequent zoning regulation on either party's use or enjoyment of that property. Although this result undeniably complicates zoning issues—this case being one example— *Spencer, Detwiler,* and *Powell* leave no room for doubt as to the legal status, or the legally effective date of inception, of Dubois Dutch's title to the property once it exercised the Option.

## II.

■ Thus, we arrive at the vexing matter that lies at the heart of this case: whether and when the Property was divided-in-fact or Subdivided as a matter of law. Dubois Dutch's argument requires that the division-in-fact of the Property into the two smaller parcels legally coincided with the execution of the 1982 Lease and Option. In support of its argument, Dubois Dutch directs our attention to the MPC section 107, which defines "subdivision" as follows:

> the division or redivision of a lot, tract or parcel of land by any means into two or more lots, tracts, parcels or other divisions of land including changes in existing lot lines for the purpose, whether immediate or future, of lease, partition by the court for distribution to heirs or devisees, transfer of ownership or building or lot development. . . .

53 P.S. § 10107. Dubois Dutch in particular draws our attention to the "by any means" language in the definition to support its claim that formal municipal approval is not a

13. In support of this claim, Guido appeals to our decision in *In re Michener,* 382 Pa. 401, 115 A.2d 367 (1955), and the Commonwealth Court's disposition of *Gulla v. North Strabane Township,* 676 A.2d 709 (Pa.Cmwlth.1996), *aff'd,* 551 Pa. 588, 712 A.2d 281 (1998). In *Michener,* we considered and rejected the right of parties to affect zoning matters by private contract. In *Gulla,* the Commonwealth Court—and, in turn, this Court—affirmed the trial court's conclusion that the parties had no standing to protest a township's formal subdivision approval because their claim was based solely on a private right established by deed.

necessary condition to the division-in-fact of one parcel into two or more smaller parcels.

Our analysis leads us to conclude that, when Dubois Dutch attempted to exercise the Option in 1998, Pennsylvania law related the transaction back to 1982 and recognized it as a conveyance, as of 1982, of the Restaurant Parcel. Thus, logic dictates that the property must have been divided-in-fact as of the effective date of that sale. We reject, however, Dubois Dutch's argument that MPC section 107's reference to "lease" compels the conclusion that the property was divided-in-fact at the time of execution of the lease. This contention, which echoes the trial court's ruling,[14] defies the plain language of the above definition. A careful reading reveals that division-in-fact may occur by any means, including changes in existing lot lines, and that such changes may occur *for the immediate or future purpose* of lease, or building or lot development. In contending that MPC section 107 contemplates the instantiation of property division *by way of* lease, Dubois Dutch and the trial court mistake ends for means and broaden the definition beyond its terms. We agree with the Commonwealth Court that "the **potential** right to exercise an option to purchase, created by a lease in 1982, which Dubois Dutch did not seek to exercise until 1999," cannot in itself have divided-in-fact the property as of 1982. *Guido*, 809 A.2d at 1041–42 (emphasis in original). To hold otherwise would lead to the absurd result that the Property would have been divided-in-fact by virtue of an inchoate interest in property the holder might opt not to exercise, leaving the owner with a division of his property he did not desire at the hands of someone with no interest in effecting such a division. However, just as the exercise of the Option passed equitable title to the optionee effective as of the date of the inception of the Option, so *must*

14. *See* Trial Ct. Op. at 9 (ruling that the definition of "subdivision" contained in MPC section 107 "clearly contemplates that a division of land 'by any means,' including the signing of a lease, constitutes a subdivision" as of 1982); *see also White v. Township of Upper St. Clair*, 799 A.2d 188, 202 (Pa.Cmwlth.2002) (holding that a lease conveying a discrete parcel of the town's land to a lessor "creates a subdivision" within the meaning of the MPC). *But see id.* (concluding "that the Township has subdivided Boyce Park for the purpose of the lease").

it have effectuated division-in-fact of the Property without which the idea that equitable title was then conveyed would be incoherent.

Nevertheless, division-in-fact does not amount to a governmentally recognized Subdivision; indeed, an interested governmental body may view a particular division-in-fact as illegal.[15] Thus, notwithstanding our recognition of the applicability of the "relation back" doctrine to equitable ownership, we cannot conclude that the Property was legally Subdivided through some sophistry arising from the actions of the parties or operation of law absent active governmental contemplation and ratification.

### III.

Having established that the law views Dubois Dutch's exercise of the Option as effectuating transfer of the Restaurant Parcel to Dubois Dutch as of the date of the 1982 Lease and Option, and that we must of necessity recognize that such conveyance resulted in the division-in-fact of the Property into the Restaurant Parcel and the Gas Station Parcel, we now must consider the impact of these determinations on the paramount question of how government should view the two lots resulting from these transactions. In addressing this issue, we must first examine why the legislature requires formal Subdivision approval.

The MPC provides that "[w]here a subdivision and land development ordinance has been enacted by a municipality under the authority of this article, no subdivision or land development of any lot ... shall be made ... except in accordance with the provisions of such ordinance." 53 P.S. § 10507. Moreover, the MPC mandates that subdivision ordinances "shall require that all subdivision and land development plats of land situated within the municipality shall be submitted for approval to the governing body." 53 P.S. § 10501.

15. The pragmatic implications, if any, of such illegality are unclear, and need not be determined herein.

This formal approval process effectuates the purposes of the MPC which, *inter alia*, include protecting and promoting the safety and health of the public, accomplishing coordinated development, guiding the uses of land and structure, and preserving the Commonwealth's natural resources. 53 P.S. § 10105. The MPC additionally suggests appropriate contents of a municipality's subdivision ordinance including, *inter alia*, requiring conformance with the municipality's comprehensive development plan; street, curb, and walkway provisions; water and sewage requirements; and flooding abatement measures. *See* 53 P.S. § 10503. While such issues may not be relevant in every Subdivision, as they do not appear to be relevant in the current case, the approval process allows the municipality to protect the public's health and safety and to coordinate development in those instances where Subdivision could affect the community negatively.

In the case *sub judice*, while we recognize that Dubois Dutch could not have sought Subdivision approval until it exercised the Option, as discussed *supra*, we agree with the Commonwealth Court that Dubois Dutch's "decision to exercise its right, or to forego its right, was the sole impediment to its right to official subdivision." *Guido*, 809 A.2d at 1042. Had Dubois Dutch exercised the Option prior to the adoption of the new lot size requirements in the 1996 Zoning Ordinance and obtained formal approval under the 1965 Subdivision Ordinance, the two properties would have been conforming lots under the 1964 Zoning Ordinance, and would therefore have fit the 1996 Zoning Ordinance's definition of a preexisting non-conforming lot. By choosing not to exercise the Option and seek Subdivision approval until 1998, Dubois Dutch assumed the risk that the ordinances might change such that one or both of the individual parcels would not comply with "the minimum requirements of the Sandy Township Zoning Ordinance," which would prevent approval under the Subdivision Ordinance.[16]

16. Our limited grant in the case does not encompass whether the Commonwealth Court correctly determined that a designation of a parcel as a pre-existing non-conforming use could not satisfy the

As previously noted, the MPC and the 1997 Subdivision Ordinance nevertheless provide a procedure by which the municipality's governing body can excuse failures to conform to the ordinance. Parties may request modifications as set forth in MPC section 512.1:

> The governing body or the planning agency ... may grant a modification of the requirements of one or more provisions if the literal enforcement will exact undue hardship because of peculiar conditions pertaining to the land in question, provided that such modification will not be contrary to the public interest and that the purpose and intent of the ordinance is observed.

53 P.S. § 10512.1(a). As the Commonwealth Court observed, however, the MPC modification procedure requires the request for modification be provided in writing and "state in full the grounds and facts of unreasonableness or hardship on which the request is based, the provision or provisions of the ordinance involved and the minimum modification necessary." 53 P.S. § 10512.1(b). We agree with the Commonwealth Court that Dubois Dutch's argument before the Planning Commission in favor of designating the property a pre-existing non-conforming use cannot be viewed as a "tacit request" for modification. *Guido*, 809 A.2d at 1043.[17]

Therefore, we affirm the Commonwealth Court's determination that while the 1982 Lease and Option in themselves did not divide-in-fact the property as a matter of logical necessity, division-in-fact necessarily occurred when Dubois Dutch exercised the Option and the law recognized the conveyance as relating back to 1982. We also hold that division-in-fact in no

Subdivision Ordinance's requirement that the lots conform to the "minimum requirements" of the Zoning Ordinance. We note, however, that such a reading furthers the MPC's subdivision provisions' purpose of allowing municipalities to regulate community development by requiring those requesting Subdivision approval to meet the current zoning requirements, absent an approved request for modification.

17. On the record before us, however, we see no obvious impediment to either party filing an appropriate modification request to permit the Planning Commission to determine whether this circumstance warrants a modification relating to the subdivision approval process. It appears that arguments could be made by both parties in favor of modification.

way impels governmentally sanctioned Subdivision. Consequently, we affirm the Commonwealth Court's ruling that the division-in-fact effectuated under the 1982 Lease and Option failed, under these circumstances, to satisfy the Subdivision approval requirements of the applicable 1997 Subdivision Ordinance. Finally, we agree with the Commonwealth Court that Dubois Dutch failed to request modification in compliance with MPC section 512.1. Accordingly, we affirm the Order of the Commonwealth Court reversing the decision of the Court of Common Pleas of Clearview County. We leave the parties with the opportunity to seek further relief pursuant to the modification procedure established by the MPC and Sandy Township and/or to complete the underlying litigation seeking specific performance, consistently with this decision.

Justice SAYLOR files a concurring opinion in which Chief Justice CAPPY and Justice NIGRO join.

Justice SAYLOR concurring.

I join the majority opinion, except for portions of its discussion concerning the principle of relation back as applied in the circumstances of this case.

While the majority ultimately reaches the conclusion that relation back does not apply relative to the attempt to effect (retroactively) a *de facto*, legal subdivision, *see* Majority Opinion, at 1229, I respectfully differ with certain of its efforts to reconcile the relation-back principle with this conclusion. In particular, my thinking does not align with the majority's indications that optioned property segments must be viewed as retrospectively divided in fact upon the exercise of an option. *See, e.g., id.* at 1226–27, 1229. To me, it is preferable merely to recognize from the outset that, while an optionee's equitable title may in fact be deemed to relate back to the date of the execution of the option for certain purposes,[1]

---

1. *See, e.g.,* BAXTER DUNAWAY, 1 L. DISTRESSED REAL EST. § 11:46 (2004) (observing that "in most jurisdictions a prior lease which contains an option to purchase must be subordinated to the mortgage or the mortgage will be extinguished by the exercise of the option[;] [a]lthough the option is exercised after the recording of the mortgage, the

relation back serves no meaningful role in determining whether and when a legal subdivision has been effected, at least where the parties to the option made no effort to comply with governing land-use regulation prescribing a procedure for lawful real estate subdivision that was in place at the time of their initial agreement.

I also reiterate the majority's observation that application of general principles of law and equity to further address the parties' respective interests arising out of the option agreement in the circumstances as they have unfolded is beyond the limited scope of this appeal.

Chief Justice CAPPY and Justice NIGRO join this concurring opinion.

conveyance generally 'relates back' to the recording of the lease and option to purchase and, consequently, wipes out the mortgage").