tinued to live with her after her marriage. They had both lived for many years in a small town, where each inhabitant knew all the others. For three or four years she had kept house for a man living across the street from the decedent and, when she lost her situation with him, she entered the employment of the decedent as housekeeper. The marriage took place three months later, and his death occurred a year afterwards. He had an estate of about $20,000, nearly all of which he had received from the estate of his second wife, concerning whose will there had been litigation to which much publicity had been given and which had terminated in his favor. The result and the amount received were subjects of general knowledge in the community. There was evidence that she had believed his estate to be much larger than it really was and that she had said that she signed the agreement because, if she did not, some other woman would and that she might as well have the money secured by it as anybody else. They deliberately made a bargain by which he secured a caretaker, and she secured a home and compensation for services to be rendered during a period of uncertain but necessarily quite limited duration. She had sufficient knowledge as to his estate to enable her to act advisedly, and there is no adequate reason for releasing her from her contract.

The decree is affirmed.

---

## Howell's Estate.

*Vendor and vendee—Articles of sale of real estate—Deed clear of incumbrances—Interest.*

When the vendor in articles of agreement for sale of land is to give vendee a deed "clear of incumbrances," and the contract provides for immediate possession of the land by the vendee, as part of the benefit for the consideration to be paid, if no interest is stipulated for in the meantime by the vendee, none is payable until after the incumbrance is removed by the vendor and deed tendered.

Argued March 9, 1909. Appeal, No. 17, Jan. T., 1909, by

George O. Rice and Stanley Howell, administrators, from decree of O. C. Northampton Co., on petition for specific performance in Estate of D. W. Howell. Before FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ. Affirmed.

Petition for specific performance.

The petition was in substance as follows:

George O. Rice and Stanley Howell were appointed administrators of the estate of David W. Howell, deceased.

In his lifetime said David W. Howell was the owner of a tract of land situated in Northampton county, Pennsylvania.

He entered into articles of agreement on August 4, 1902, to grant, bargain and sell said land to the Northampton Railroad Company. The agreement provided that an annual ground rent of $250 shall be paid by said Northampton Railroad Company, and that within thirty days from the date of the agreement a ground rent deed should be executed and delivered by the vendor.

The agreement also gave the purchaser the option at any time to extinguish the said ground rent upon the payment of $5,000 and all arrearages of rent.

Permission was given to the vendee to immediately enter upon said land and construct its railroad thereon.

A further provision gave the vendor the privilege within thirty days of accepting $5,000 in the five per cent bonds of the said railroad company in lieu of the said ground rent and upon his accepting the said bonds to deliver within said thirty days a deed in fee simple, clear of incumbrances, to the said railroad company.

In pursuance of said permission to enter the vendee took possession of said land and has used and enjoyed the same from the date of its entry.

The vendor, in his lifetime, accepted the privilege of said bonds of the railroad company in lieu of the annual ground rent and tendered a deed in fee simple, which deed the said railroad company refused to accept because of the existence of a public road upon and over a part of the land, which it claimed was an incumbrance thereon. This contention was

sustained by the court below and the Supreme Court upon appeal.

The said public road was formally vacated upon petition of the vendor with notice to the vendee at the time of its vacation.

The vendor died, having made no provision for the performance of said contract during his lifetime; the administrators, therefore, presented this petition to the orphans' court praying said contract shall be specifically performed, and that the vendee shall pay interest on the purchase money from the time of entry.

Scott, P. J., filed the following opinion:

There is no substantial dispute about the facts. They are admitted as pleaded in the bill. Some additions thereto are averred by answer and admitted or proven, which are embraced in specific findings, as follows:

Contemporaneously with the execution of said contract, the Northampton Railroad Company delivered to the said David W. Howell a check for $1,000, as provided in said contract, who thereupon delivered to the said company a receipt in these words: "Received, Martins Creek, Aug. 4th, 1902, from Northampton Railroad Company, draft of William Jay Turner for One Thousand Dollars in pursuance of agreement bearing even date herewith, same to be held as in said agreement provided, and returned upon delivery of deed. In consideration whereof said Northampton Railroad Company is privileged to enter at once on the premises covered by said agreement and proceed with its work of construction." That said draft was found by the administrators of David W. Howell among decedent's papers after his death, was produced in court at the time of hearing, and tendered to defendant.

The railroad company in the work of construction immediately after the execution of the agreement between the parties, occupied a portion of the public road, since vacated (hereinafter mentioned): the part over which its tracks were laid, was not traveled by the public.

A bill for specific performance of this agreement was filed

in the common pleas by David W. Howell in his lifetime
(No. 10, December Term, 1903), and execution of it resisted; a
deed was tendered to vendee March 31, 1903, but refused,
because the vendor could not make title "clear of incum-
brance," which incumbrance consisted of a public road over
and longitudinally along its tracks for some distance. The
bill was dismissed September 12, 1904, and judgment affirmed
March 20, 1895: Howell v. R. R. Co., 211 Pa. 284.

The public road to which reference is above made, was there-
after, by final confirmation on June 12, 1905, vacated by
viewers appointed upon petition of David W. Howell. The
defendant had notice of the fact.

David W. Howell died November 10, 1905, without having
previously made provision for performance of the contract,
and letters of administration were granted by the register on
November 16. This bill was exhibited by the administration,
July 13, 1908. From the first of April prior to this last date,
through the period intervening, there were negotiations pend-
ing between opposing counsel relative to amicable adjustment
of this demand.

The bonds of the railroad company have all been sold, are
not listed for sale at any exchange, have no fixed and definite
market value, are held chiefly as investment securities, and
upon application to a broker for the purchase of them the ad-
ministrators were informed he did not know where they could
be bought. The president of the defendant company asserts
his ability to procure them, if required, and by his answer
stands ready to deliver them now without interest.

### CONCLUSIONS OF LAW.

When the vendor in articles of agreement for sale of land
is to give vendee a deed "clear of incumbrances," and the
contract provides for immediate possession of the land by
the vendee, as part of the benefit for the consideration to be
paid, if no interest is stipulated for in the meantime by the
vendee, none is payable until after the incumbrance is re-
moved by the vendor and deed tendered.

While the answer denies jurisdiction of the court to decree

specific execution of the contract by asserting an adequate remedy at law and suggests laches of the complainants and their deceased intestate, the real contention is whether payment shall be delivery of the bonds with interest value from the date of the execution of the agreement (August 4, 1902), or without it.

In the eleventh paragraph of the answer to the whole petition "the respondent avers that it has been ready and willing at all times, both during the lifetime of said David W. Howell and since his decease, to deliver the bonds of the Northampton Railroad Company, referred to in the contract annexed to said petition, immediately upon the delivery to it of a proper deed conveying to it the premises described in said petition in fee simple, clear of incumbrances, together with the return of the check for $1,000, and is now ready and willing to deliver said bonds, bearing interest from the date when such deed shall be delivered and said check returned."

But few observations, therefore, are necessary beyond discussion of this single question of the right to interest, for the others may well be treated as waived by the pleadings.

The principles which apply to specific performance of the contracts of decedents in the orphans' court under the Act of assembly February 24, 1834, sec. 15, P. L. 70, are the same as those which control a chancellor in equity: Brady's Appeal, 66 Pa. 277.

No doubt the petitioners, after diligent pursuit, might be able to purchase these bonds by advertisement or other methods, although not listed upon the exchanges. It is a familiar rule that equity will not entertain jurisdiction to decree execution of a contract by a vendee which contemplates only the payment of money; nor generally where the consideration consists of goods or chattels, stock or bonds for which differences in market values after purchase thereof may be adequately compensated, but it is not universal. There are many exceptional cases. It is not applicable where some specific chattel bargained for has a personal value, or which the defendant only can supply; nor where the whole issue of bonds is held by one or a few persons for investment; when they have

no definite value in the general market; when the difficulty of acquisition by the complainant would be great, or practically impossible.

This agreement contemplated immediate possession by the vendee of the land to be conveyed, with a covenant that a railroad should be constructed upon it and operated. The tract was surrounded by other lands of the vendor. He exercised within thirty days the option to take these bonds, instead of the annual ground rent of five per cent upon a capitalization of $5,000, and it is, therefore, evident that his purpose had in view larger possibilities than seemed then to be measured by this percentage on investment. Jurisdiction in equity is often assumed upon the ground that relief by bill is the most convenient, although there be a remedy at law: Bierbower's Appeal, 107 Pa. 14; Appeal of Brush Electric Light Co. et al., 114 Pa. 574. And if the question was more doubtful than it seems to me, as no demurrer was interposed, the bill will not be dismissed: Dorff v. Schmunk, 197 Pa. 298.

When time is not of the essence of the contract, delay in tendering title, especially if acquiesced in by the defendant, or occasioned by his objections, is no bar to specific execution of it unless there has been gross and inexcusable laches or such a change in the situation of the parties or property that suitable compensation cannot be made by payment of interest to one party, or its correlative loss to the other: Morgan v. Scott, 26 Pa. 51; Sylvester v. Born, 132 Pa. 467; Waterman, Spec. Perf., sec. 478; Tiernan et al. v. Roland and Blackstone, 15 Pa. 429. Time is not usually of the essence of a real contract, but it may become so, although not expressly stipulated for, when the consideration for it consists of securities, the value of which in periods of business activity or depression is subject to enhancement or depreciation: Waterman, Spec. Perf., sec. 460. In 1904 these bonds were "a trifle above par." But their price now has not been proven.

But I need say no more upon these two propositions. They have not been pressed by argument, except to urge that by delay the complainants in equity have forfeited interest, if otherwise they might have been entitled to receive it.

The case relating to interest demands on real contracts, are divided into two classes with a distinction between them which is not plain until after close examination, for all of them do not seem to be harmonious at first view. The question seldom arises in suits for specific performance by a vendor except by petition to execute the contracts of decedents in the orphans' court, as bills for that purpose are predicated upon the fact that they cannot be maintained for payment of the consideration in money. It is sometimes presented on a vendee's bill after tender, but more frequently in actions of covenant or ejectment to enforce the payment stipulated for in articles of agreement.

When the contract has not been executed by delivery of a deed at the time appointed, and possession has not been given, the general rule upon the subject is thus stated: "The vendor is regarded as trustee of the land for the benefit of the purchaser, and liable to account to him for rents and profits, or for the value of the use and occupation, and the purchaser is treated as trustee of the purchase money unpaid and charged with interest thereon unless the purchase money has been appropriated, and no benefit has accrued from it to the purchaser:" 2 Beach, Eq. Jur., sec. 633. When possession of the land, however, has been taken by the vendee (otherwise than as part of the contract), and then holds and enjoys it without disturbance, the situation is reversed, and it has been held under these circumstances that as the purchaser has the profits of his use and occupation that will be deemed equivalent to the interest on the price to be paid which then belongs to the vendor: Fasholt v. Reed, 16 S. & R. 266 (ejectment); Minard v. Beans, 64 Pa. 411 (covenant); Blair's Estate, 178 Pa. 582 (bill by vendee); Hershey's Estate, 213 Pa. 601 (bill by executors of vendor in orphans' court).

The class of cases to which this principle applies are those in which there is a certain time appointed for delivery of the deed, and payment of the purchase price, but the vendee fails to receive his deed at the designated period, either because the vendor is not ready, or is unable to give a clear title, or remove incumbrances at once. In these instances the purchase money

is legally "due" by the terms of the vendee's covenant at the day set for payment. Although he gets no deed immediately he has an equitable title in the land, and continued undisturbed possession of it makes him responsible for the interest from that date, provided the vendor is vigilant in removing the disability, and the vendee has not kept his money uninvested and unproductive, but appropriated to this anticipated and future payment.

The other class of cases is where the mutual covenants between the parties are treated as dependent: Adams v. Williams, 2 W. & S. 227; Keeler & Co. v. Schmertz et al., 46 Pa. 135. If the consideration is to be paid only upon receipt of deed for a clear title, or one free from incumbrances, the money is not "due" until such a conveyance is tendered, for the vendor may never be able to comply; and as interest, when not expressly contracted for, is the legal and uniform rate of damages for detention of money after it becomes due, it is not charged against a vendee willing to comply with the condition who is in possession under the contract itself, until the event happens upon which payment depends. It may be said of this rule what Judge SHARSWOOD said of the distinction between sharing in profits and receiving a certain percentage of them as compensation, in the determination of a partnership existence: "It must be admitted to be of a very refined and shadowy character, but it has been authoritatively established." It will be found supported and illustrated by great variety of facts in McKennan v. Sterrett, 6 Watts, 162; Minard v. Beans, 64 Pa. 411; Robbins v. Coal Co., 198 Pa. 301; Nettleton v. Caryl, 14 Pa. Superior Ct. 443. In this last cited case it is said by Judge RICE (p. 445): "It is contended that where the vendee of land is put into possession, he must pay interest on the purchase money, whether the articles call for it or not. It is not to be denied that expressions can be found in text-books and reports which read by themselves and apart from the facts of the cases in which they are used would seem to sustain this contention. . . . But (p. 447) where the contract expressly provides that he shall have immediate possession of the land, and that the purchase money shall not be due and payable un-

til a future day, and is silent upon the subject of interest, no such equitable consideration enters into the case, and we understand the law to be that he is not chargeable with interest until the debt is due." In Robbins v. Coal Co., 198 Pa. 301, it was declared (p. 304), with respect to a condition in the agreement similar to the one here that, "The first installment of the unpaid purchase money, therefore, was not 'due' and payable until White had delivered not only a deed, but one clear of incumbrances. Until both of these conditions had been complied with the defendant was not required to pay the money, and was in no default in not paying it."

Even in Blair's Estate, 178 Pa. 582, the authority of which was strongly put before me by the petitioning counsel, it will be seen upon examination of the facts that the money upon which interest was charged from October 17, 1887, was due and payable on that date by the contract, and the vendee whose bill it was for performance, wished to evade it for the equitable considerations therein discussed, but which were adjudged untenable.

The present contract, it has been expressly decided by judgment on appeal, belongs to this class: Howell v. Northampton R. R. Co., 211 Pa. 284.

The defendant has been in undisturbed possession of this land since August, 1902; has constructed, and is now operating its railroad over it, and thus enjoyed the profits of its use and occupation without compensation. But this is not so inequitable as it seems from the statement of the fact. It was put into immediate possession, not unlawfully nor by mere acquiescence of the vendor, but by virtue of the contract, and the use of it pending a conveyance as required was part of the benefit to be received for the consideration then named, as will be seen from the receipt given for the draft of $1,000, as well as from the written agreement. The only default about the execution of the deed was that of the decedent. Under these circumstances no action at law would lie for the rents and profits, or use and occupation. He tendered no deed at all until March 31, 1903. The objection to it was not capricious. When declined because the incumbrance of the highway ex-

isted, the vendor did not proceed to remove it, but filed his bill in equity to compel the defendant to accept it with this defect, and continued the litigation through the appellate court where it did not reach final decision before March 20, 1905.

I do not say that having thus made an election of remedy with full knowledge of the facts there is none left to his representatives here, in the absence of rescission by the defendant, but they can have no cause of complaint on behalf of his estate, which was not a legal grievance to him in his own lifetime.

The expenses of this protracted litigation to the defendant, although the amount is not shown, must have fairly equaled or exceeded the ground rent valuation up to the time of his death put upon the occupancy of the land by the vendor in his agreement. While counsel fees and expenses incurred in a suit may not be recovered in an action at law, it must not be forgotten that specific performance is decreed only as a matter of grace, and a strict legal right is not sufficient to move a chancellor if it will be inequitable or unfair, nor without indemnification for a loss occasioned by the acts of the plaintiff: Waterman, Spec. Perf., sec. 176. This subject-matter is pleaded as a defense against the prayer of the bill.

The incumbrance was lifted on June 12, 1905, and the decedent living for five months afterward made no tender of conveyance. The defendant knew of the vacation of the road, but as it did not intend to rescind the contract, was not required to tender performance on its own behalf. After the decedent's death his own deed, if yet in existence, would have conveyed no title: Karmane v. Hoober, 3 W. & S. 253. But his administrators at once, or after short delay incident to examination of his business papers, could have made proof of the contract under the Act of March 31, 1792, 3 Sm. L. 66 (1 Purd. Dig. 738), and as the defendant had always pleaded its readiness to take the title when clear of incumbrances and pay the consideration, conveyance by them under an order of court would have been attended by no material loss: Hagerty's Case, 4 Watts, 305; Chess's Appeal, 4 Pa. 52. The defendant was still holding possession and enjoying the profits pending

delivery of this deed, as part of the consideration of the decedent's contract. That this period was longer or shorter than had been originally anticipated did not legally affect the company. The complainants here had the power to terminate the difficulty, but took no steps to comply with the stipulated conditions for conveyance until two years and a half more had expired.

The defendant is entitled to a fee simple deed, pursuant to the terms of the agreement and return of the draft, for which it will make payment in bonds of the Northampton Railroad Company, guaranteed as therein specified, of the par value of $5,000, with coupons attached, bearing interest from the date of delivery of the deed and draft. The plaintiffs will pay the costs. Let a decree be prepared in accordance with this opinion, submitted and settled sec. reg.

*Error assigned* was decree entered in accordance with the opinion.

*Aaron Goldsmith*, for appellant.

*Edward J. Fox* and *James W. Fox*, for appellee.

. Per Curiam, April 12, 1909:
The decree is affirmed on the opinion of the learned president judge of the orphans' court.

---

# McLaughlin *v.* Summit Hill Borough, Appellant.

*Election law—Ballots—Increase of indebtedness—Borough—Constitutional law—Repeal of statutes—Acts of June 9, 1891, P. L. 252, and April 29, 1903, P. L. 338.*

1. The ballots to be used at an election to ascertain whether the indebtedness of a borough shall be increased must be official ballots furnished by the county commissioners and must be in the form prescribed by the Act of April 29, 1903, P. L. 338.